WOOD v. PATTERSON

5-3732                                    398 S. W. 2d 672

Opinion delivered February 7, 1966
[Rehearing denied March 14, 1966.]

*Crumpler & O'Connor, Mahony & Yocum,* for appellant.

*Spencer & Spencer,* for appellee.

GEORGE ROSE SMITH, Justice. This is a suit by the appellees, the lessors, to cancel an oil and gas lease (in form two duplicate instruments) with respect to twenty of the forty acres covered by the lease. The appellants, the lessees, concede that some right of cancellation exists, but they insist that it extends to ten acres only—not twenty. The dispute actually turns upon a single question: Was the lessees' original application to the Oil and Gas Commission for a permit to drill a well on the *west* half of the tract effectively changed to refer to the *south* half of the tract? The chancellor

found that the lessees' proof did not establish their contention that the application had been changed. If that finding was correct the chancellor was right in canceling the lease with respect to the entire east half of the forty-acre tract.

The facts are somewhat involved. The lease covered the southwest quarter of the northwest quarter of a certain section in Union county. The parties used a printed form, but they inserted a special provision that if the first well should result in production the lessees agreed to begin a second well within sixty days and in like manner to drill additional wells "until one well is located on each drilling unit as established by the Arkansas Oil and Gas Commission."

Two producing wells were eventually drilled. Both were in the southwest quarter of the forty-acre tract, but they tapped different oil-bearing sands. The lessees, in applying to the Commission for a permit to drill the first well, completed a printed form in which one of the blank spaces was filled in as follows:

"Number of acres and description of drilling unit: 20 *acre Unit, W½ SW¼ NW¼*............................."

The Commission issued the permit. The lessees completed the well, Patterson No. 1, which became the discovery well for what is apparently a very small producing formation.

Upon completion of the well the lessees filed a written request that the Commission hold a hearing for the purpose of adopting field regulations for the production discovered by the Patterson No. 1 well. Notice of the hearing was sent to the lessors, who did not attend. After the hearing the Commission issued a four-page order fixing the regulations for the formation. Among other things the order prescribed twenty-acre drilling units and specified that each unit should be the

north half, the east half, the south half, or the west half of a regular governmental one-sixteenth section.

The appellants insist that as a result of the hearing their drilling unit for Patterson No. 1 was changed from the west half of the forty acres, as their application for a drilling permit stated, to the south half of the tract. The asserted change, however, was not mentioned (a) in their request for the hearing, (b) in the notice of hearing that was sent to the lessors, or (c) in the Commission's order. (There is testimony that individual drilling units are specifically described in very few Commission orders such as the one involved here.)

At the outset the appellants argue that their original selection of a twenty-acre drilling unit should not be given any weight, because the possibility existed that the regulations later adopted by the Commission might not sanction a drilling unit of exactly twenty acres. Even so, that uncertainty was dispelled when the Commission did prescribe a twenty-acre unit. Inasmuch as the description in the permit application proved to be in conformity with the Commission's subsequent order we are of the opinion that thereafter the original description could be relied upon as a declaration of the lessees' intention.

The appellants' other proof comes to this: At the hearing before the Oil and Gas Commission the appellants' petroleum engineer, whose testimony was taken down by a court reporter, explained some six or seven regulations that the lessees were requesting. In the course of his testimony the witness asked that the drilling unit for Patterson No. 1 be the south half of the forty-acre tract. That request was sandwiched between two similar requests, also involving land descriptions, with no intimation whatever that a change in the identity of the drilling unit was being sought.

None of the five members of the Commission testified in the court below. The Commission's executive di-

rector, Edward A. Albares, was called as a witness. Albares testified that his notes, taken during the Commission's conference after the hearing, showed that the commissioners "voted unanimously to grant the application as requested." At some later date, evidently after the present controversy had arisen, Albares made a hand-written notation on the original application for the drilling permit, that the unit had been changed "at Hearing July 11, 1963," to the south half of the tract. Albares candidly admitted that he made the notation after a discussion not with the commissioners but with his own staff.

The appellants do not argue, and are not in a position to argue, that they themselves made the asserted change in the drilling unit, for there is no proof of any action at all on their part. Hence they contend that the Commission made the change. No doubt the Commission *could* have done so, but there is no proof that the Commission consciously *did* do so. All that the Commission actually did was to issue a routine order granting a routine request for field regulations. It would strain credulity to assume that the commissioners compared the application for a drilling permit (which was not involved in the hearing) with the engineer's oral recitation of a technical land description, noticed that the two descriptions were not alike, and concluded not only that a request for a change was being tacitly made but also that it should be granted.

Public records should not be needlessly subjected to the uncertainties of oral testimony. Until this controversy arose the only available public record relating to the drilling unit (the permit application) described it as the west half of the tract. An amendment of that record should, we think, be found in an instrument of equal dignity, not in a court reporter's notes. See *Ark. State Highway Commn.* v. *Wilmans*, 239 Ark. 281, 388 S. W. 2d 916 (1965), where we rejected a contention that public records had been changed by an oral agreement.

Another consideration strengthens our conclusion. If the appellants are right in their contention (an issue we do not reach) that Patterson No. 1 extended the primary term of the lease for *all* formations underlying the south half of the forty acres and that Patterson No. 2 likewise extended the term for *all* formations underlying the west half, then the lessors would be in the helpless position of being unable to drill, or to authorize anyone else to drill, the northeast quarter (ten acres) of their land, despite the cancellation of the appellants' lease with respect to those ten acres. This would be true because the northeast ten acres could not be made a part of either of the two twenty-acre units that would otherwise be available, for in both instances the other half of those potential drilling units would already be encumbered by the appellants' lease. Such an inequitable result should, if possible, be avoided.

The decree is affirmed.